I'm Robert Jobin. I'm appearing today on behalf of the petitioner Antonio Paolo. The background to this case is, it really begins with ADPA, the Anti-Terrorism and Effective Death Penalty Act of 1996, which rendered ineligible for 212c relief anyone convicted of an aggravated felony or two crimes involving moral turpitude. In St. Cyr, in 2001, the Supreme Court carved out an exception to that, basically saying that individuals who had pled guilty in reliance on the state of the law before ADPA came into effect could continue to be eligible for 212c relief. This gentleman, Mr. Paolo, he couldn't benefit from that decision immediately because he had a conviction that postdated ADPA. He had a 1998 conviction for receiving stolen property. But he went back to state court. He vacated that conviction, put himself in a position where he believed that he was eligible for 212c relief. He had already been removed at that point, ordered removed, I should say, and the time for filing a motion to reopen had already run. So he went to district court, filed a petition for rid of habeas corpus in which he alleged that he had vacated the conviction that prevented him from being eligible for 212c relief. He was now eligible, and in light of that, he wanted a new hearing. The government opposed the habeas on a couple different grounds, but what's most relevant to this case, and this is on page 540 of the record, the government argued at length he's not eligible for 212c relief. There's no point in giving him a hearing because even if you give him a hearing, he can't qualify for 212c relief. They argued, among other things, that he'd been convicted of an aggravated felony, he'd served more than five years, which is not true, and that therefore he was ineligible for 212c relief. The district court rejected those claims outright and specifically held, made a specific finding that he is eligible to go forward with his application for 212c relief. There was no statutory or disqualifying ground here that ultimately he could have a hearing, and ultimately the issue would be, is he entitled to relief in the exercise of discretion? The government didn't appeal that. It became a final judgment. They never went back to district court to try to reopen that proceeding or amend the judgment. Instead, when we were – when the proceedings were reopened pursuant to the district court's order, they argued that notwithstanding the district court's order, this guy's not eligible for 212c relief. And we argued simply, no, you're stuck with a final judgment finding, holding that he is, in fact, eligible. Now, the immigration judge held to the contrary, the board held to the contrary, but this case, it seems to me, it's clearly controlled by basic principles of res judicata. There's a final district court judgment saying he's eligible for 212c relief. And on what ground did the IJ and the BIA say they were not bound by res judicata? They argued that there had been a change in the law, that the Board of Immigration Appeals had rendered these decisions in Blake and Brieva, holding that individuals like this man were ineligible because he couldn't show that his aggravated felony conviction had a comparable ground among the grounds of inadmissibility. But that's always been the law. I mean, we argued, you know, in Abebe that that was a dramatic change in the law. And this court disagreed with us. And they said explicitly that this is not a change in the law. The BIA had maintained it. Now, we said that explicitly in the panel decision. Right. Now, of course, that went en banc, and we did, well, we did what we did. We did what we did. Right. So that panel decision was vacated. On the other hand, I don't read the en banc decision as saying anything inconsistent with what we held on that point. My understanding is that the en banc decision only addressed the constitutional claim that we had focused in on, and it essentially adopted, you know, the remainder of the panel decision's opinion. Maybe. But technically, when we go en banc, we vacate it. Right. So that panel decision might have been right. Right. In fact, I think it was right. But it's not, for our purposes, a clean holding that binds us. Actually, you know, I was looking for that. When I take my seat, I want to look at the en banc decision again, because I thought there was a mention in there. There is something in the en banc that suggests that the en banc agrees with it. Exactly. And so, I mean, if that's not a change, I mean, first the government argues that insofar as there's a change in the law, well, res judicata doesn't apply. I strongly disagree with that. The case that they're relying upon, this Clifton case, says exactly the opposite, that the general rule, even if there is an intervening change in the law, you're stuck with your judgment if you didn't appeal. But, you know, even if that were the case in this particular situation, there isn't really a change in the law. The regulations at the time of the district court ruling required a comparable ground. The government could have argued this case at that point. They chose not to. They lost. They're stuck with the judgment from the district court. When the BIA decides the Blake and the Brevia cases, or Breva cases, does the BIA say that it's changing the law? Not at all. Does it just say the normal fiction to say we're just applying the law as it always has existed, maybe clarifying it a little bit? Right. Exactly. They're saying we've always required a comparable ground. The regulations require a comparable ground. There's no comparable ground here. So they're really, you know, we argued vigorously that this was a change in the law. And other people have made that argument. And everybody who's made that argument to the Court of Appeals, not just this one, but all the other courts of appeals, has lost. Now, in a baby, when you argued that this was a change in the law, did the government take a position on that point? They did. And, in fact, they argued to the contrary, this is not a change in the law. The government might want to respond to a question as to whether or not they're judicially estopped. This is a judicial estoppel says that a party cannot take a position in one case that advantages it, and then in a later case change that position to take an opposite position when that opposite position advantages it now in the new case. So the government may want to respond to that as well. But the ultimate, you know, end of that is that the courts disagreed. And they definitively hold across the country, every circuit that addressed it, it's not a change in the law. Okay. You saved a little time. Yes. Yeah. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. This Court should uphold the agency decision and deny the petition for review. With all due respect to the arguments from Mr. Paulo, this Court issued the ABB decision, the Board issued the Blake, the Breiva decisions. Those decisions are binding. So the ultimate relief that Mr. Paulo now seeks to remand his case back to the Board for further remand back to the immigration judge would be futile because under the current case law, which applies, he's not eligible for relief. Now, you've got an order from Judge Wilkins' court that says he's eligible for 212C relief and is now incumbent upon the IJ to see if he meets the criteria in a sense of hardship and so on. Yes, Your Honor. So how do you get out from under that order? The simple answer to that, Your Honor, is that order may have been accurate, and I don't mean to challenge the accuracy of that order. That order, even if we take it as accurate ñ Well, you didn't appeal that order. Absolutely. And that's why I'm not trying to relitigate or challenge that order. That order was in 2004. Yes. He was eligible in 2004. He got the opportunity. Exactly the opportunity that the district court judge ordered. The district court judge specifically said the attorney general will afford him the opportunity to apply. Not a grant, but the opportunity to apply. He got that opportunity. What do you mean he got that opportunity? He got to file an application. He submitted an application for 212C relief. That strikes me as an unrealistic, almost frivolous reading of the district court order. The district court, in my view, clearly ordered that he be considered for 212C relief on the merits of the criteria of 212C. The response to that, Your Honor, is the government's position that at the time of the district court order, Blake had not been issued, Brieva had not been issued, and certainly Bibi had not been issued. Right. So when the district court judge says you are now eligible, I'm not disputing that as of 2004 he was now eligible. By the time the case goes back first to the board for procedural reasons, to remand the case to the immigration judge, by the time it gets to the immigration judge, the board has issued its precedent decisions in Blake and Brieva, the immigration judge says you're now legally, you're not eligible. I cannot grant you relief. And you're saying that Blake and Brieva changed the law? We're saying they constitute an intervening change, yes, Your Honor. They're precedent decisions. And did you argue the contrary in front of the panel in front of Bibi? I would want to double-check that, Your Honor. Let's assume for a moment that you did. Are you a stop, judicially, from changing your position? I don't believe the government is a stop, Your Honor, because otherwise we'd be in a quandary where this Court would be ordering in 2011 for the agency to consider an application that cannot be granted under the current case law, and there should be no dispute that. But we have cases all the time where somebody is afforded relief under the law that exists at time period A. They're entitled to that relief. And if they're ordered to get relief under A, they're entitled to relief under A. And if they're ordered to get relief under B, law incomes period B, the fact that a person might not be eligible for it in B but was in A doesn't change anything. If they're ordered to get relief under A, they're entitled to relief under A. Your Honor, it's the government's position that in those situations, if it's — if they're ordered to be afforded the opportunity for relief and there's a change in the law, a change in the statute, that would apply prospectively. Well, if you read it, I think I shared Judge Fletcher's position. I think it's a very extremely narrow reading that you have given to the district court's order. I read it as being a statement that he's eligible under 212C. So there are three grounds you've asserted for alleging that there is no right for him to rely upon that, there's no estoppel and so on. I'm not terribly persuaded yet. Have you got something more you can suggest? Your Honor, I think we have to go back to if this case — if this Court were to remand this case to the agency and it finds its way back to an immigration judge again, the immigration judge would look at the lay of the land now and say, I have Blake, I have Brieva, I have Abebe. Well, unless we say you're governed by the law that existed at that point, he was ordered — he was determined to be eligible, you apply the laws that existed at that time. Your Honor, with due respect, I would suggest that to order — to say that he was eligible in 2004, that's an accurate statement under the law. To say that he's eligible in 2011 under the case law would not be an accurate statement because of the intervening changes. And the Supreme Court has recognized, this Court has recognized that while a law, passage of a new law, repeal of a law operates prospectively, case law applies immediately. And he is, in a sense, the victim of timing. Had his case gone back earlier — And that's really the rub, isn't it? Exactly, Your Honor. Otherwise, we could be here in 10, 15, 20 years, and someone says, wait a minute, I got a conviction vacated, send me back to the law of 1992, and this Court would     I don't know how long I'm going to be here. But the point is that there was a 20-some-year-old precedent from this Court — 20-plus year precedent from the Board where the individual was not eligible. Yeah. I'm not sure I find that analogy very closely applicable to what we have here in front of us. Let's focus for a moment on whether or not Blake and Breva were changes of law. The panel decision in Abbey very clearly held that they were not. Are you aware of any other court in the country has held that Blake and Breva constitute a change of law? I would want to check, Your Honor. The only one that would come to mind would be the Second Circuit when they overruled the Blake decision. But I would need to check that. You haven't checked that already? I have not. I did not look at the specific language in Blake with regard to that question, so. You have an argument from Mr. Job that says that every circuit to have addressed the question agrees with our panel decision in Abbey v. And I ask you, do you agree with that? And you say you have to check? No, I agree with that. Oh, okay. Perhaps I misunderstood your question. Your question is, did other circuits address whether it was a change in the laws? Correct. And Mr. Job says that the other circuits that have addressed that question all have held that there's been no change in the law resulting in Blake and Breva. Yes. I understand that's his argument. And do you agree with that? Without going back and double-checking, I would certainly defer to this Court's read of those cases. I don't believe that's inaccurate, no, Your Honor. Okay. But I understand even in this case, Mr. Job argued that in his opposition to the motion to pre-dermit that the Blake and Breva decisions constituted a change. He seemed to have lost on that point. He seemed to have lost, Your Honor, but what's good for the goose should be good for the gander, so to speak. He's now coming to this Court saying the government took one argument and they should be held to it, but I'm going to take an argument and I should not be held to it. But it sounds as though you want sauce for the goose in the other direction. You don't want to be held to the argument you made in Abbey v. To the argument that the government made, Your Honor. Well, you meaning the government, of course. I understand, Your Honor. Your Honor, again, I think this Court is, as you said, that's the rub, that's the quandary here, is to send this case back would be to say that there was a follow-up agreement. We're all very familiar with the rule. While a case is still on appeal, if there's a change of law during that time, we apply the new law. I mean, that's obvious. But we're not dealing with that situation. We've got an order from the district court that was not appealed. Correct. And you're saying we don't have to obey that order because there's been a change in the law subsequent to that order. Now, that may or may not be right. I'm inclined to think that that's wrong. But even if it were true as a general principle that you don't have to obey an order that wasn't appealed because the law has changed subsequent to the entry of that order, without going back with a Rule 60 motion, which you never did, the question still remains, even on your argument, you've got to show change in law. And I don't see that you've made that showing. Your Honor, again, it is our position that those cases, Lake, Breave, and Beebe, do constitute that change. But specifically, for example, Mr. Apollo argues on page 12 of his brief that the district court found he was, quote, now eligible. That was in 2004. He's not eligible anymore. And again, if this Court sends this case back and says, consider this case in the district court order, the district court order was geared towards that possibility. Yes, but the district court said not that it could apply. The district court said he was eligible. So doesn't that have to be taken into account at the time that the IJ got it that he's eligible? Your Honor, I think with the district court order, and I see my time has expired, if I can respond. Please. Thank you, Your Honor. What the district court order said was, you are eligible, based on our read of the statute, based on our read of the precedent, case law, et cetera. You are eligible. Therefore, Attorney General, you will direct that this case, through the board, to the immigration judge. You will direct that Mr. Apollo be given the opportunity to apply. The district court judge could not say he will be granted 212C relief because that's a decision for an immigration judge. So all the district court order did, it certainly discussed the eligibility. It couldn't have discussed Blake. It couldn't have discussed Breiva. It couldn't have discussed Abebe. But it couldn't have discussed whether he was eligible or not. Under the law. Yes. When it went back to the immigration judge, the decision of the court was that he's eligible. Your Honor, the only thing that I would add to that is that the decision of the district court was that he was eligible to apply under the law as it stood in 2004. He got that opportunity. The immigration judge didn't say, for example, I'm not going to even take your application. They took the application. I believe the hearing was continued at least once, if not twice. There was a motion to pre-dermit filed by the government saying now that we have this new case law, there is no comparable ground of uncomparable ground that you can argue such that you're eligible for relief. So while he may have been statutorily eligible at the time of the district court judge's decision in 2004, by the time the case gets to immigration court, under the case law, precedent-binding case law from Blake Brieva from the board, he's not eligible. Then the case comes up to this court. And as Mr. Polo acknowledges in his brief, this court is bound by a B.B. If this court is bound by a B.B., then Mr. Polo is not eligible for relief. Now, which B.B. are you talking about? I believe he's – That is to say there's a panel decision and there's an en banc decision. I believe his argument specifically says bound by the en banc decision. And now that the cert's been denied in that case, that he is bound by that decision. Well, at most in your favor, the en banc decision in a B.B. doesn't speak to the question. There's a suggestion in a B.B. that the en banc – in the en banc decision in a B.B. that the en banc panel agrees with what the panel held. I understand that, Your Honor. And I understand we're subject to that, subject to the Court's questions. Okay. Thanks very much. Thank you, Your Honor. Mr. Job? Okay. The en banc decision specifically addresses this only in the final footnote, where it says, For the reasons given in the three-judge panel opinion, the BIA didn't erroneously or inconsistently apply Section 212C. Likewise, we reject Petitioner's due process retroactivity argument. They adopt the panel's opinion. Now, the panel, interestingly, when we were arguing that the Court shouldn't even give deference to the Board's interpretation because they had been inconsistent, they had not applied this in a consistent fashion, the panel says explicitly a B.B.'s premise is false. The BIA has not recently changed course, but rather has maintained a consistent position for many years. It couldn't be more clear. Now, the government says that, you know, this Court's decision in a B.B., the en banc decision, now renders him ineligible, changes the law. Well, no. I mean, the district court's decision was that under St. Cyr, this guy was eligible. The en banc decision specifically says we're not doing anything here that would interfere with the Supreme Court's decision in St. Cyr. We're not attempting to undermine that in any way. People who are eligible under St. Cyr remain eligible. They can continue to be granted 212C relief. This man was found to be eligible under 212C and a final valid judgment from the district court that they didn't appeal. They're sorry they didn't appeal, but they didn't appeal. They're stuck with it. You know, you both counsel make good arguments on these things. I guess what troubles me is that the word eligible doesn't mean he gets through the hoop because he's eligible to apply for a discretionary act. That's exactly right. And even if the law has not changed, you still have the discretion of the attorney general involved. And as was pointed out, we really can't order that the I.J. find any particular way. Correct. So how do we get around this? If you had your druthers, what would you like us to rule in this case? That the district court considered his statutory eligibility and found that there was no going forward, no statutory bar to his going forward. And that includes whether there was a comparable ground. That's the essence of the district court's decision. Of course the district court can't say he's deserving in the exercise of discretion. That's something for the immigration judge to decide. Sure. So if that happened and it went back to the I.J. and the I.J. said, well, okay, I look at this, but based on the discretion that I have, I find that he's not eligible. Then we're out of luck. And you're out of luck. Yeah. Right? Okay. Okay. Thank you. Okay. Thank both sides. Now, one or the other is going to lose, but I have to say they were nice arguments. Okay. The case of Powell v. Holder is now submitted for decision.
judges: Hug, Fletcher W. , Smith M.